IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ARTURO REVELES,<br>    Plaintiff,<br><br>v.<br><br>CAMPBELL, *et al.*,<br>    Defendants. | Case No. 2:25-cv-02282-JEH |

**Merit Review Order**

Plaintiff, proceeding *pro se* and currently incarcerated at Menard Correctional Center ("Menard"), filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 1). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

**I**

In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**II**

Plaintiff files suit against Intelligence Officers A. Campbell and O'Blenis, Lieutenant John Doe (assigned to the restrictive housing/segregation unit at

Danville), Adjustment Committee Chairperson Gregory Little, Adjustment Committee Co-Chairperson Kelsey Smith, Pontiac Warden Mindi Nurse, Defendant Lieutenant Hitchens (Security Specialist at Pontiac), Administrative Review Board ("ARB") Chairperson Ryan Nothangle, and Illinois Department of Corrections ("IDOC") Acting Director Latoya Hughes.

While incarcerated at Danville Correctional Center ("Danville"), Plaintiff started Adult Basic Education Classes and signed a good time contract to receive Earned Program Sentence Credit on February 13, 2024.

On March 31, 2024, Defendants O'Blenis and Campbell escorted Plaintiff to restrictive housing in handcuffs.

On April 1, 2024, Defendant John Doe served Plaintiff with an Offender Disciplinary Report for Investigative Status, or an "ISR." Plaintiff alleges the ISR incorrectly stated that Defendant O'Blenis was the serving employee. Plaintiff alleges the ISR was incomplete and did not reasonably inform him of the subject of the investigation. Later that day, Defendants O'Blenis and Campbell interviewed Plaintiff. Defendant O'Blenis asked Plaintiff if he wrote a kite to assault the warden and gave it to "KKrazy." (Doc. 1 at p. 3). Plaintiff denied the accusations and asked to see the kite to examine the handwriting. Defendant O'Blenis informed Plaintiff he did not have the kite because the confidential source flushed it. Plaintiff agreed to comply with the investigation and undergo a Voice Stress Analysis ("VSA"). Plaintiff alleges the interview with the VSA examiner "turned into an aggressive interrogation." *Id.* at p. 5. Plaintiff alleges the examiner informed him the VSA results indicated he was dishonest.

On April 2, 2024, Plaintiff was transferred to Pinckneyville Correctional Center ("Pinckneyville") with a tactical team and placed in a disciplinary pod. *Id.*

On April 17, 2025, the VSA examiner interrogated Plaintiff again, asked if he wanted to confess, and informed him the confidential source passed his VSA. Plaintiff reiterated he did not write the kite.

On April 30, 2024, Plaintiff was served a disciplinary report written by Defendant Campbell. *Id.* at pp. 6-8.

On May 3, 2024, Plaintiff appeared before Adjustment Committee members Defendants Little and Smith for a hearing. Plaintiff pled "not guilty." Plaintiff alleges Defendants Little and Smith did not present any evidence against him but found him guilty of all charges.

On May 8, 2024, the warden of Pinckneyville signed off on Defendants Little and Smith's findings and recommendations. Plaintiff alleges he never received a copy of the Adjustment Committee Final Summary Report.

On May 21, 2024, Plaintiff was transferred from Pinckneyville to Pontiac Correctional Center ("Pontiac"). When Plaintiff arrived at Pontiac, he received a new inmate identification card with the words "Staff Assaulter" printed on the back. *Id.* at p. 9. Plaintiff alleges Defendants Lieutenant Hitchens and Warden Nurse reclassified Plaintiff as a "Staff Assaulter" even though that action was not recommended by Defendants Little and Smith.

On June 4, 2024, Plaintiff submitted a grievance regarding the disciplinary report. On approximately September 16, 2024, Plaintiff received a notice from the Prisoner Review Board ("PRB") stating that a hearing was scheduled on September 18, 2024. On the notice, the reason for the hearing was listed as "Revocation." *Id.* at p. 10.

On September 18, 2024, Plaintiff appeared before the PRB and was informed that Defendants Little and Smith had recommended six months revocation of good conduct credit ("GCC").

On approximately October 1, 2024, Plaintiff received a new calculation sheet, which showed his parole date had been set back six months pursuant to the PRB's decision, which was based on Defendants Little and Smith's recommendation.

On October 24, 2024, Defendant ARB Chairperson Nothangle denied Plaintiff's grievance, stating: "This office finds no violation of the grievant's due process in accordance with DR 504.80 and DR 504.30. This office is reasonably satisfied the offense cited in the report was committed." *Id.* at p. 11.

On November 20, 2024, Plaintiff's correctional counselor submitted Plaintiff for restoration of the revoked GCC.

On December 12, 2024, Plaintiff was released from segregation and three months of his GCC were restored.

On January 2, 2025, Plaintiff was transferred to Menard Correctional Center ("Menard"), a maximum-security facility. Plaintiff alleges the transfer to Menard was most likely a disciplinary transfer. Plaintiff states he still had not received a Final Summary Report from the disciplinary hearing.

### III

The review of a procedural due process claim requires a two-part analysis: whether the plaintiff was deprived of a protected liberty or property interest, and if so, what process was due. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir. 1996). In other words, if a constitutional right is identified, then procedural due process must be provided. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000). A due process violation may be implicated if "the defendants deprived [plaintiff] of a liberty interest by imposing an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *McCoy v. Atherton*, 818 F. App'x 538, 541 (7th Cir. 2020) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Merely placing a prisoner in segregation does not amount to an atypical or significant change in circumstances. *Lekas v. Briley*, 405 F.3d 602, 607-11 (7th Cir. 2005). "[A] liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original) (characterizing up to 90 days in segregation a relatively short period, depending on the conditions imposed); *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997).

Here, Plaintiff alleges he spent 255 days in segregation, but he does not describe the conditions in segregation. Plaintiff's allegations are insufficient to state a due process claim based on his disciplinary segregation. *See Williams v. Brown*, 849 F. App'x 154, 156 (7th Cir. 2021) (only lengthy period of segregation and harsh conditions will violate due process).

Plaintiff alleges he faced a disciplinary transfer to a much more restrictive maximum-security facility. Plaintiff's transfer to a maximum-security institution does not implicate his federal due process rights, as "[a] prisoner has no due process right to be housed in any particular facility." *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)); *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). Plaintiff fails to state a due process claim regarding his alleged disciplinary transfer.

Plaintiff alleges he lost six months of GCC when Defendants Little and Smith found him guilty during the disciplinary hearing on May 3, 2024. Once a state awards good conduct credits to an inmate, the inmate has "a constitutionally-protected liberty interest in being released from prison before the end of his term . . . ." *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016); *see also Torres v. Brookman*, 155 F.4th 952, 956 (7th Cir. 2025) ("Prisoners generally have a cognizable liberty interest in earned credit-time and other benefits that decrease their sentence

length, so the threatened loss of good time credits triggers a cognizable liberty interest.") (internal citation omitted). A "state may not deprive inmates of [earned] good-time credits without following constitutionally adequate procedures to ensure that the credits are not arbitrarily rescinded." *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir. 1996); *see also Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) ("But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.").

That being said, Plaintiff cannot pursue a § 1983 claim until the guilty finding has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) ("[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if a judgment in favor of the plaintiff would 'necessarily imply' the invalidity of his conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated.") (construing *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Plaintiff does not allege that his finding of guilt based on the disciplinary report was overturned in some manner. *See Sims v. Hocker*, No. 4:23-CV-04221-JEH, 2025 WL 1943385, at *4 (C.D. Ill. July 15, 2025). In fact, he alleges the PRB upheld the Adjustment Committee's decision, and his grievance regarding the disciplinary report was denied. Plaintiff states three months of his GCC were restored on December 12, 2024, but it is unclear from the Complaint why this occurred. *Id.* at p. 11, ¶ 73. Plaintiff fails to state a due process claim based on the revocation of his GCC.

6

Additionally, Plaintiff's sparse allegations are insufficient to proceed on a due process claim against Defendants Lieutenant Hitchens and Warden Nurse, who allegedly reclassified him as a "Staff Assaulter" when he arrived at Pontiac.

Finally, Defendant Hughes cannot be liable based only on her supervisory role as Acting Director of the IDOC, as there is no *respondeat superior* liability under § 1983. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). Plaintiff does not allege that Defendant Hughes was personally involved in any constitutional violation. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.").

Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Court will allow Plaintiff a final opportunity to file an Amended Complaint within 30 days of this Order. If Plaintiff fails to file a timely Amended Complaint, or if the Amended Complaint fails to state a claim for relief, his case will be dismissed with prejudice.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Court will allow Plaintiff a final opportunity to file an Amended Complaint within 30 days of this Order. If Plaintiff fails to file a timely Amended Complaint, or if the Amended Complaint fails to state a claim for relief, his case will be dismissed with prejudice. Plaintiff's Amended Complaint will replace Plaintiff's Complaint in its**

entirety. The Amended Complaint must contain all allegations against all Defendants. Piecemeal amendments are not accepted.

2) **Plaintiff's Motion for Status [6] is MOOT.**

*It is so ordered.*

Entered: January 9, 2026

s/Jonathan E. Hawley
U.S. District Judge