E-FILED
Thursday, 30 April, 2026  03:27:34 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

ARTURO REVELES,
    Plaintiff,

v.

A. CAMPBELL, *et al.*,
    Defendants.

Case No. 2:25-cv-02282-JEH

### Merit Review Order

Plaintiff, proceeding *pro se*, filed an Amended Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights at Danville Correctional Center ("Danville"), Pinckneyville Correctional Center ("Pinckneyville"), and Pontiac Correctional Center ("Pontiac"). (Doc. 12). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

**I**

In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

1

## II

Plaintiff files suit against O'Blenis (Intelligence Officer at Danville), Campbell (Intelligence Officer at Danville), John Doe (Lieutenant in Restrictive Housing at Danville), Gregory D. Little (Adjustment Committee Chairperson at Pinckneyville), Kelsey S. Smith (Adjustment Committee Co-Chairperson at Pinckneyville), Hitchens (Security Specialist at Pontiac), and Mindi Nurse (Warden at Pontiac). Plaintiff describes Defendant John Doe as a white male, medium build, about 5'7", and approximately late 30's to early 40's. (Doc. 12 at p. 2, ¶ 13).

In his Amended Complaint, Plaintiff no longer names Ryan Nothangle or Latoya Hughes as Defendants. Therefore, they are dismissed without prejudice.

While incarcerated at Danville, Plaintiff started Adult Basic Education ("ABE") classes and signed a good-time contract to receive Earned Program Sentence Credit ("EPSC") on February 13, 2024.

On March 31, 2024, Defendants O'Blenis and Campbell escorted Plaintiff to Restrictive Housing in handcuffs.

At approximately 10:00 a.m. on April 1, 2024, Defendant John Doe served Plaintiff with an Offender Disciplinary Report for Investigative Status written by Defendant O'Blenis. In the report, Defendant O'Blenis identified himself as both the employee who wrote the report and served the report upon Plaintiff, which was false. Defendant O'Blenis also indicated he served the report upon Plaintiff at 1:00 a.m., which was inaccurate. Plaintiff also states the report was missing the shift supervisor's signature, the reviewing officer's decision and signature, and a hearing investigator review. Plaintiff claims Defendants O'Blenis and John Doe conspired to violate his due process rights, as Defendant O'Blenis forged his own name where Defendant John Doe should have identified himself as the employee who served the report.

At approximately 1:00 p.m. on April 1, 2024, Defendants O'Blenis and Campbell interviewed Plaintiff and informed him they were in possession of two weapons and a kite. Defendant O'Blenis asked Plaintiff if he wrote a kite to assault the warden and gave it to "KKrazy." *Id.* at p. 3. Plaintiff denied the accusations and asked to see the kite to examine the handwriting. Defendant O'Blenis informed Plaintiff he did not have the kite because the confidential source flushed it. Plaintiff agreed to comply with the investigation and undergo a Voice Stress Analysis ("VSA"). Plaintiff alleges the VSA examiner accused him of lying.

On April 2, 2024, Plaintiff was transferred to Pinckneyville with a tactical team. On April 17, 2024, the same VSA examiner interrogated Plaintiff again, asked if he wanted to confess, and informed him the confidential source passed his VSA. Plaintiff reiterated that he did not write the kite.

On April 30, 2024, Plaintiff was served a disciplinary report written by Defendant Campbell for two charges: "111-Security Threat Group or Unauthorized Organizational Leadership and 102b-Assault." *Id.* at p. 5.

On May 3, 2024, Plaintiff appeared before Adjustment Committee members Defendants Little and Smith for a hearing. Plaintiff pled "not guilty." Plaintiff alleges Defendants Little and Smith violated his due process rights by, *inter alia*, finding him guilty even though Defendant Campbell presented no physical evidence, such as the alleged kite and two weapons. *Id.* at pp. 6-7. On May 8, 2024, the warden of Pinckneyville approved the Adjustment Committee's findings and recommendations.

On May 21, 2024, Plaintiff was transferred to Pontiac. When Plaintiff arrived at Pontiac, he received a new inmate identification card with the words "Staff Assaulter" printed on the back. *Id.* at p. 7. Plaintiff alleges Defendants Hitchens and Nurse violated his due process rights by reclassifying him. The reclassification

meant Plaintiff was not eligible to participate in a work assignment for three years and obtain EPSC.

On September 16, 2024, Plaintiff was notified that a Prisoner Review Board ("PRB") hearing would be held on September 18, 2024. The notice identified the reason for the hearing as "Revocation." *Id.* Plaintiff states he had not been informed about any revocation, as he still had not received a copy of the Adjustment Committee's Final Summary Report.

On September 18, 2024, Plaintiff appeared before the PRB and was informed that Defendants Little and Smith had recommended six months revocation of good conduct credit ("GCC"). On approximately October 1, 2024, Plaintiff received a new calculation sheet showing his expected parole date was now six months later. On November 20, 2024, Plaintiff's correctional counselor submitted him for restoration of the revoked GCC.

On December 12, 2024, Plaintiff was released from Restrictive Housing. Plaintiff alleges he spent nearly nine months in Restrictive Housing at Danville, Pinckneyville, and Pontiac. During that time, Plaintiff alleges he was rarely allowed to leave his cell, he never received the mandatory minimum of three showers per week, movement for recreation (yard/gym) was usually cancelled, and he was not permitted to participate in any work assignments. On December 12, 2024, three months of Plaintiff's GCC was restored when the Adjustment Committee's finding of guilt was overturned or invalidated.

On January 2, 2025, Plaintiff was transferred to Menard Correctional Center ("Menard"), a facility which allegedly houses "some of the most violent inmates with long-term sentences." *Id.* at p. 8. Plaintiff states there are constant lockdowns at Menard due to fights and threats. Plaintiff was not allowed to attend ABE classes or participate in any good-time programs, he never received the mandatory minimum of three showers per week, his visits were frequently cancelled, and he

4

often was not permitted to leave his cell for several weeks at a time. Plaintiff alleges the transfer to Menard, which is a maximum-security facility, was most likely a disciplinary transfer.

On September 18, 2025, Plaintiff received the Final Summary Report from the disciplinary hearing on May 3, 2024. The report falsely indicated that Plaintiff had been served with the report on May 21, 2024.

### III

The Due Process Clause of the Fourteenth Amendment prohibits the deprivation "of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, and those who seek to invoke its protection "must establish that one of these interests is at stake." *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest. Thus, the question is whether a protected liberty interest exists, and if so, whether [Plaintiff] received adequate process to protect it." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024) (internal citations omitted).

A protected liberty interest is implicated if, as a result of the disciplinary conviction, the prisoner's sentence is increased, as in the loss of GCC, or where he is subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 484 (1995); *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997). Once a state awards GCC to an inmate, the inmate has "a constitutionally-protected liberty interest in being released from prison before the end of his term . . . ." *Figgs v. Dawson*, 829 F.3d 895, 906 (7th Cir. 2016); *see also Torres v. Brookman*, 155 F.4th 952, 956 (7th Cir. 2025) ("Prisoners generally have a cognizable liberty interest in earned credit-time and other benefits that decrease their sentence length, so the threatened loss of good time

credits triggers a cognizable liberty interest.") (internal citation omitted). A "state may not deprive inmates of [earned] good-time credits without following constitutionally adequate procedures to ensure that the credits are not arbitrarily rescinded." *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir. 1996); *Webb v. Anderson*, 224 F.3d 649, 651–52 (7th Cir. 2000); *Martin v. Zatecky*, 749 F. App'x 463, 465 (7th Cir. 2019).

Additionally, "a liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original) (characterizing up to 90 days in segregation a relatively short period, depending on the conditions imposed); *see also Williams v. Brown*, 849 F. App'x 154, 156 (7th Cir. 2021) (only lengthy period of segregation and harsh conditions will violate due process).

Plaintiff alleges Defendants O'Blenis and Campbell issued a disciplinary report against him and Defendants Little and Smith found him guilty at an Adjustment Committee hearing without due process. As a result, six months of his GCC was revoked, he spent nearly nine months in Restrictive Housing, and was transferred to a maximum-security facility where he was reclassified as a "Staff Assaulter." The Adjustment Committee's findings were overturned, at least in part, when three months of Plaintiff's GCC was restored on December 12, 2024. (Doc. 12 at p. 8, ¶ 65). During his time in Restrictive Housing from March 31, 2024 until December 12, 2024, Plaintiff alleges he was rarely allowed to leave his cell, he never received the mandatory minimum of three showers per week, movement for recreation (yard/gym) was usually cancelled, and he was not permitted to participate in any work assignments. The Court finds Plaintiff's Amended Complaint alleges a plausible Fourteenth Amendment procedural due process claim against Defendants O'Blenis, Campbell, John Doe, Little, and Smith.

Plaintiff's sparse allegations against Defendants Hitchens and Nurse, who allegedly reclassified him as a "Staff Assaulter" on May 21, 2024 based on the Adjustment Committee's findings, which had not been overturned, are insufficient to proceed on a due process claim. Defendants Hitchens and Nurse are DISMISSED WITHOUT PREJUDICE.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, Plaintiff alleged sufficient facts to proceed on a Fourteenth Amendment procedural due process claim against Defendant A. Campbell, O'Blenis, John Doe, Gregory Little, and Kelsey Smith. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendants Ryan Nothangle, Latoya Hughes, Hitchens, and Mindi Nurse are DISMISSED WITHOUT PREJUDICE. The Clerk is directed to TERMINATE Ryan Nothangle, Latoya Hughes, Hitchens, and Mindi Nurse.

3) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5)      Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

6)      If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7)      This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and

the Court has entered a scheduling order, which will explain the discovery process in more detail.

8)     Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

9)     Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10)    Plaintiff shall be provided with a copy of all pertinent medical records upon request.

11)    Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

12)    The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: April 30, 2026

s/Jonathan E. Hawley
U.S. District Judge

9